IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GUSTAVO A MUNOZ, #R29347, <br><br>      Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES INC., ALEXANDRIA BROWN, ASHLEY SHARP, DR. DAVE, and JOHN/JANE DOE, <br><br>      Defendants. | Case No. 24-cv-01664-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Gustavo Munoz, an inmate of the Illinois Department of Corrections who is currently incarcerated at Shawnee Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff alleges that upon entering the custody of the Illinois Department of Corrections (IDOC), he was examined by medical staff at Stateville Northern Reception Center on March 3, 2023. It was recorded in his medical file that he had a left knee meniscus tear, left shoulder pain, and right hip pain. (Doc 1, p. 9). On March 24, 2023, Plaintiff was transferred to Shawnee

Correctional Center (Shawnee) and seen by a nurse, who took his vitals. Plaintiff informed the nurse that he was experiencing pain in his left knee, left shoulder, and right hip. The nurse gave Plaintiff naproxen and told him to "tell them on intake." (*Id.*).

On March 25, 2023, Plaintiff went to the health care unit for intake. (Doc. 1, p. 10). On his intake form, the nurse marked "no assistive devises/special need required," even though Plaintiff's medical record establishes a "collective serious medical need and evidence from x-ray and medical permit for low gallery, low bunk based on problems climbing stairs and/or climbing onto the top bunk." (*Id.*).

Plaintiff was seen by nursing staff on April 4, 7, 21, and 27, 2024. (Doc. 1, p. 10-11). At the first appointment Plaintiff informed the nurse that he was in a lot of pain, and the nurse noted "a gait disturbance and a limited range of motion." Plaintiff states that his knee was swollen and warm to the touch, but the nurse did not examine any of his injuries. The nurse gave Plaintiff ibuprofen and Tylenol. At the next three appointments, Plaintiff continued to express that he was in a lot of pain. He repeatedly requested a different mattress or a double mattress because his current mattress was aggravating his pain. He again was only given ibuprofen and Tylenol and told that he would not be given a double mattress. The nurses who treated him did not exam him or look at his injuries. Plaintiff's knee continued to be swollen and warm to the touch. (*Id.*).

On April 28, 2023, Plaintiff had an appointment with either Physician Assistant Brown or Physician Assistant Sharp. (Doc. 1, p. 11). Plaintiff states that these two defendants treated him interchangeably, and he cannot remember exactly when he was treated by each individual. During the appointment, Plaintiff informed Brown/Sharp about his ongoing pain in his shoulder, knee, and hip, that his knee was warm and swollen, that he started having pain and spasms in his lower back, and that he was in need of a new or double mattress because his current mattress was exacerbating his symptoms. Brown/Sharp instructed Plaintiff to stretch more and continue taking

ibuprofen and Tylenol. (*Id.*).

On May 2, 2023, Plaintiff had an appointment with Brown/Sharp for stomach issues. (Doc. 1, p. 12). When he tried to talk to Brown/Sharp about his continued hip, knee, and shoulder pain, Brown/Sharp told him that the visit was limited to treating his stomach issues and that he would have to submit a new sick call request to be seen for additional conditions. (*Id.*).

Plaintiff had appointments with Brown/Sharp on May 17 and 27, 2023, for his ongoing pain. (Doc. 1, p. 12). During the May 17 appointment, Brown/Sharp told Plaintiff that she would check on Plaintiff's "ortho referral," and gave Plaintiff Tylenol. At the following appointment, Plaintiff begged Brown/Sharp for a thicker mattress, but his request was denied. (*Id.*).

Plaintiff was seen by Brown/Sharp again on June 20, 2023. (Doc. 1, p. 14). Plaintiff told Brown/Sharp that his pain was getting worse and was more consistent and frequent. He reported that his knee was still swollen and warm to the touch and again requested a better mattress. Plaintiff also asked to shower in a shower that had handles because it was difficult to shower without falling. Brown/Sharp "would not listen…or do anything to help." Brown/Sharp told Plaintiff that he had an appointment with an orthopedist scheduled. (*Id.*).

On July 13, 2023, Plaintiff had an appointment with a nurse and repeated his complaints of excruciating pain and the need for a thicker mattress. (Doc. 1, p.15).

Plaintiff had an appointment with Dr. Beyer, an orthopedic doctor, at Heartland Regional Medical enter on July 18, 2023. (Doc. 1, p. 15). Plaintiff states that he was surprised to discover that the referral was only to exam and treat his left knee. Dr. Beyer ordered an x-ray of his knee and examined Plaintiff. Dr. Beyer diagnosed Plaintiff with advanced osteoarthritis. He also told Plaintiff that "there was complete loss of lateral joint space." He gave Plaintiff an injection into his left knee and a knee brace and discussed with Plaintiff the need for weight loss. (*Id.*). Dr. Beyer told Plaintiff that the only way to resolve his issues was to perform a total knee replacement but

that "they would see if the injection would help some first." (*Id.* at p. 16). Plaintiff told Dr. Beyer that he was also having pain in his right hip. Dr. Beyer examined and took x-rays of Plaintiff's right hip and told Plaintiff that they would go over the results at the next appointment. (*Id.*).

On July 24, 2023, Plaintiff had an appointment at Shawnee with Dr. Dave. (Doc. 1, p. 16). While waiting for his appointment, the nurse came and informed Plaintiff that the appointment would be canceled because Dr. Dave had not received the dictated notes from Plaintiff's appointment with Dr. Beyer. Plaintiff begged to be seen because he was in a lot of pain and had questions for the doctor. The nurse said that the doctor refused to see him, and the appointment would be rescheduled once the notes had arrived. (*Id.*). Plaintiff's next appointment with Dr. Dave was again canceled. (*Id.* at p. 17).

Plaintiff went to the health care unit with complaints of pain and requesting a new mattress on August 8 and 11, 2023. (Doc. 1 p. 17). The medical staff continued with the same ineffective treatment of Tylenol, ibuprofen, and naproxen and denied his request for a new mattress. (*Id.*).

Plaintiff had an appointment with Brown/Sharp on August 15, 2023. (Doc. 1, p. 17). Again, his request for a new mattress was denied, he was told to continue with pain medication, and he was given a muscle rub. (*Id.*).

Plaintiff had another appointment with Dr. Beyer on August 29, 2023. (Doc. 1, p. 18). Dr. Beyer confirmed that a left knee replacement "was the definite solution." Dr. Beyer gave Plaintiff another steroid injection. Dr. Beyer reported that the x-ray of Plaintiff's right hip showed osteoarthritis with complete loss of join space and considerable bone loss. Dr. Beyer recommended hip replacement surgery at a "tertiary care center by a subspecialist in hip arthroplasty." Dr. Beyer scheduled a CT scan and recommended a double mattress, tramadol, and that Plaintiff be transferred to a facility that could accommodate Plaintiff's ADA needs and that was closer to Chicago where Plaintiff could receive hip replacement surgery. (*Id.*).

On September 6, 2023, Plaintiff was seen by Brown/Sharp. (Doc. 1, p. 18). Plaintiff spoke to Brown/Sharp about what had been discussed with Dr. Breyer. (*Id.*). Brown/Sharp said, "she didn't know but that she was going to try to order the tramadol with the doctor's approval." (*Id.* at p. 19). Plaintiff asked if he would have an appointment with Dr. Dave since Brown/Sharp could not answer his questions. Brown/Sharp said that an appointment with Dr. Dave was not needed. Plaintiff asked Brown/Sharp about Dr. Beyer's mattress recommendation, and she replied that Dr. Beyer "never made such a recommendation." Plaintiff asked to be scheduled to see Dr. Dave, and she said no. (*Id.*). Plaintiff to continued to complain about his pain and the need for a different mattress at appointments with nurses and Brown/Sharp in September, October, and November. (*Id.* at p. 19-24). He requested to see Dr. Dave, and his requests were denied. The medical staff continued to treat him with the same ineffective pain medications. (*Id.* at 19-24).

On October 9, 2023, Plaintiff had an appointment at Heartland Regional Medical Center for a CT scan of his right hip. (Doc. 1, p. 20). On December 21, 2023, Plaintiff was approved for hip replacement surgery in Chicago. (*Id.* at p. 24).

Plaintiff complains that since arriving at Shawnee he has never been seen by Dr. Dave, even after many requests, his left shoulder and lower back have not been treated, he has one thin mattress that contributes to his pain, and his conditions continue to be treated with the same ineffective pain medication.

## PRELIMINARY DISMISSAL

In the case caption, Plaintiff lists a single "John/Jane Doe" as a defendant. (Doc. 1, p. 1). He describes this defendant as "Wexford site medical personnel." (*Id.* at p. 3). In the Complaint, he discusses various interactions with unnamed nurses. Some of the unnamed nurses, but not all, he refers to as Jane Doe.

Any claims against John/Jane Doe are dismissed. While a plaintiff may use the "John Doe"

designation to refer to specific individuals whose names are unknown, he must still follow Federal Rule of Civil Procedure 8 pleading standards and include a short, plain statement of the case against each individual. It is not sufficient to simply state that a group of medical staff violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement);. Furthermore, it is not clear which nurses Plaintiff is intending to sue, as individual nurses are not listed in the case caption, and if the Jane Doe nurses are the same or different individuals. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"). Because Plaintiff has not clearly described the unknown defendant or defendants and their unconstitutional acts or omissions and properly listed them in the case caption, the claims against John/Jane Doe are dismissed without prejudice.

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., Brown, Sharp, and Dave for denying and/or delaying medical care for Plaintiff's left knee, left shoulder, right hip, lower back, and associated pain.

**Count 2:** ADA/RA[1] claim for failing to accommodate Plaintiff's physical disabilities.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice**

---

[1] Plaintiff does not mention the Rehabilitation Act (RA), 29 U.S.C. § 794(a), in his Complaint, but the Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from a pro se prisoner litigants, should be analyzed by the district court in light of both the ADA and RA, whether or not the plaintiff has asserted a claim under the latter statute. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).

as inadequately pled under the *Twombly*[2] pleading standard.

### Count 1

At this point in time, Plaintiff has sufficiently stated a claim against Brown, Sharp, and Dave for deliberate indifference to his knee, hip, shoulder, and back conditions, as well as his associated pain. Count 1 will proceed against Brown, Sharp, and Dave.

Count 1 will proceed against Wexford Health Sources, Inc. (Wexford) in part. As a corporation, Wexford can only be liable for an unconstitutional policy or practice. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Plaintiff asserts that he was not given effective pain medication because Wexford, in an effort to save money, purchases over the counter medicine, such as Tylenol and Ibuprofen, in bulk and only prescribes those types of ineffective medicines to inmates regardless of their pain needs. (Doc. 1, p. 25-26). This allegation is sufficient for Count 1 to proceed against Wexford.

The Court dismisses Plaintiff's claim for relief under the theory that Wexford's policy limiting only one issue per sick call request and addressing one issue per appointment resulted in an unconstitutional delay in medical care. (*Id.* at p. 25). The facts, as pled, show that Plaintiff was seen at least monthly by medical staff, and sometimes more, for complaints of his knee, hip, shoulder, and back. Even though there were occasions when Plaintiff was seen for other ailments and the nurse or medical provider would not discuss with Plaintiff his ongoing pain related to his knee, hip, shoulder, and back, he continued to be regularly scheduled for his knee, hip, shoulder, and back conditions when he submitted sick call requests.[3] Thus, the one issue per sick call and appointment policy did not contribute to a delay in care.

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).
[3] According to the Complaint, Plaintiff was seen by a nurse, physician assistant, or doctor on April 4, April 21, May 17, May 27, June 20, July 13, July 18, August 8, August 11, August 15, August 29, September 6, October 2, October 9, October 23, October 29, November 1, November 10, November 20, November 25, and "several dates after." (Doc. 1, p. 24).

### Count 2

Plaintiff has stated an adequate claim for violations of the ADA and RA. He claims that despite his medically documented physical disabilities, he has not been given proper shower facilities with safety handles, low gallery and low bunk permits, and an appropriate mattress. The claim cannot proceed against the individual defendants, however, because individual employees of IDOC cannot be sued under the ADA and RA. *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros,* 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). As such, Latoya Hughes, the current IDOC Director, will be added to the case, in her official capacity only, as the proper defendant for Plaintiff's ADA and RA claim.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed two motions asking the Court to recruit counsel on his behalf. (Doc. 3, 13). As a litigant in a civil case, Plaintiff has no right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). However, a District Court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915 (e)(1) (emphasis added). Plaintiff has not submitted any documentation to demonstrate to the Court that he is indigent. As he has paid the filing fee in full and is not proceeding *in forma pauperis* in this case, the Court has no basis for concluding that he is unable to afford counsel as is required by Section 1915(e). Thus, motions are denied without prejudice.

### DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Brown, Sharp, Dave, and in part against Wexford Health Sources, Inc. **COUNT 2** will proceed against Latoya Hughes in her official capacity only.

The Clerk of Court is **DIRECTED** to **ADD** the current director of the Illinois Department of Corrections, Latoya Hughes, as a defendant. Because all claims against John/Jane Doe are dismissed, the Clerk of Court is **DIRECTED** to terminate John/Jane Doe as a defendant.

Because Plaintiff's claim involves his medical care and health conditions, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Wexford Health Sources, Inc., Brown, Sharp, Dave, and Hughes (official capacity) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only to respond to the issues stated in this**

**Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 18, 2024**

        *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.